**Opinion filed December 15, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00343-CV

_____

## TODD HARMON, Appellant

## V.

## JAMES T. HARMON, Appellee

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. CV07703**

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final judgment, after a bench trial, rescinding a contract between a father and son over the operation of a cattle business. Appellant, Todd Harmon, challenges the judgment in three issues. We affirm.

*Background Facts*

Appellee, James T. Harmon, was the sole owner and operator of Blackcross Cattle, LLC. He contacted Appellant, his son, in January 2012 to request help with the operation of Blackcross. In this regard, Appellee was struggling with alcoholism

at the time that he contacted Appellant seeking assistance. Appellant traveled from Amarillo to Stephenville the next day to assist Appellee.

Appellee and Appellant soon had discussions about formalizing Appellant's participation in Blackcross. Appellee, Appellant, and Appellant's girlfriend, Linda Crim, prepared a document dated February 1, 2012, that set out various "points of consideration" that the three individuals had "agreed" upon. Among other things, this document indicated that Appellant would have a seventy-five percent ownership interest in Blackcross.

The new business relationship between Appellee and Appellant operated for less than two months before problems arose. Appellee testified that "it all started falling apart when they removed me from the checking account on March 20th." Conversely, Appellant alleged that Appellee breached their agreement when Appelle sold cattle belonging to Blackcross on April 11, 2012. Under the direction of Appellant, Blackcross sought and obtained a temporary restraining order against Appellee to prevent him from selling cattle in the future.

The suit filed by Blackcross against Appellee to obtain injunctive relief was filed as trial court cause no. CV07687 in the County Court at Law of Erath County. Some of the documents from trial court cause no. CV07687 are included in the clerk's record of this appeal, including a portion of the reporter's record from trial court cause no. CV07687 where the attorneys for the parties dictated a Rule 11 agreement into the record on or about April 27, 2012. *See* TEX. R. CIV. P. 11. The Rule 11 agreement generally provided for the interim operation of Blackcross. Among other things, the Rule 11 agreement provided for an operating budget of $20,000 for Blackcross, with future business expenses to be reviewed and mutually agreed upon by the attorneys for the parties.

Appellee filed the underlying suit, trial court cause no. CV07703, against Appellant and Blackcross on May 9, 2012. He initially sought an accounting from

2

Appellant and Blackcross based upon the Rule 11 agreement in trial court cause no. CV07687. Appellee also alleged that Appellant had violated fiduciary duties as a member of Blackcross and that Appellant had converted assets belonging to Appellee and Blackcross.

The trial entered an "Order on Motion for Temporary Injunction" on May 25, 2012, in the underlying suit wherein it restrained Appellant and Blackcross from making any expenditures of funds of Blackcross without approval of the court. The order also contained findings that Appellant and Blackcross made expenditures that violated the Rule 11 agreement. The order required Appellant to deposit $20,000 into the registry of the trial court and to make an accounting of all activities of Blackcross since January 1, 2012. The order also required Appellee to make an accounting for his sale of cattle that occurred in April 2012.

The trial court in this proceeding occurred on June 5, 2014. Blackcross was no longer a party to the proceedings at trial. In this regard, Blackcross filed for bankruptcy on August 14, 2012, and Appellee filed a notice of nonsuit pertaining to Blackcross on September 12, 2012. Appellant testified that he filed the bankruptcy proceeding on behalf of Blackcross on the advice of counsel to liquidate the business. As of trial, all assets of Blackcross had been liquidated into cash. Appellant testified that the trustee was waiting for the trial court's judgment in this case in order to disburse these funds to the creditors, Appellant, and Appellee.

The trial court entered a judgment declaring that Appellee owned 100% of Blackcross. The trial court also ordered that Appellant was to be reimbursed $39,000 for his financial contribution to Blackcross. In the trial court's findings of fact and conclusions of law, the trial court concluded that "[t]he parties should be returned, as near as possible, to their position prior to conveyance of partial ownership of Blackcross to [Appellant] with [Appellee] retaining 100% of Blackcross and [Appellant] receiving $39,000 for his original investment."

3

*Analysis*

In his first issue, Appellant asserts that the trial court erred in finding that the parties intended to modify or replace their "consummated agreement" with the Rule 11 agreement. The trial court made the following findings of fact pertaining to the Rule 11 agreement:

> 2. A suit was filed by [Appellant] against [Appellee] relating to management of Blackcross assets which was resolved by Rule 11 agreement on or about April 27, 2012.

> 3. [Appellant] breached the Rule 11 agreement by failing to provide required accountings, failing to deposit assets into the registry of the court, converting Blackcross assets to personal use and initiating bankruptcy proceedings which squandered much of the value of Blackcross.

The trial court also entered a "conclusion of law" that provided: "The original agreement between [Appellee] and [Appellant] conveying 75% of Blackcross to [Appellant] was modified or replaced by the April 27, 2012 Rule 11 agreement."

Appellant contends that the trial court erred in making these findings and rulings based upon the Rule 11 agreement. He primarily asserts that he was not a party to the Rule 11 agreement in his individual capacity. He further contends that the Rule 11 agreement did not address the parties' ownership interests in Blackcross. We conclude that Appellant's first issue addresses findings that are not ultimate fact issues to the trial court's judgment.

While an erroneous finding of fact on an ultimate fact issue is harmful error, an immaterial finding of fact is harmless and not grounds for reversal. *Andrews v. Key*, 13 S.W. 640, 641 (Tex. 1890); *Cooke County Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.). An ultimate fact issue, which a trial court is required to enter in its requested written findings of fact following a bench trial, is one that is essential to the cause of action and has a direct

4

effect on the judgment. *In re Marriage of Edwards*, 79 S.W.3d 88, 94 (Tex. App.—Texarkana 2002, no pet.). An evidentiary issue, which a trial court is not required to enter in its requested written findings of fact following a bench trial, is one the court may consider in deciding the controlling issue, but is not controlling in itself. *Id.*

As set forth in greater detail below, the trial court's judgment is one granting rescission to Appellee by returning the parties to their respective positions prior to their initial agreement which predated the Rule 11 agreement. At most, the findings pertaining to the Rule 11 agreement were evidentiary issues that the trial court relied upon in reaching its decision to rescind the parties' agreement. The noncompliance with the Rule 11 agreement evidenced the failure of the parties to be able to operate in business together. The trial court did not award a recovery based upon a breach of the Rule 11 agreement. Accordingly, Appellant's first issue does not address a controlling issue, and it cannot be a basis for reversal of the trial court's judgment. *See Teel*, 129 S.W.3d at 731–32. We overrule Appellant's first issue.

Appellant bases his third issue on the contention that he did not breach the parties' initial agreement. He is essentially challenging the legal and factual sufficiency of the evidence supporting the trial court's finding that he breached the parties' agreement. Appellant contends that the parties agreed for him to pay $39,000 and for him to manage Blackcross in exchange for a seventy-five percent ownership interest in Blackcross and that he did not breach the agreement because he paid the money and managed the business. He further asserts that there is no evidence that he mismanaged Blackcross. We disagree.

In an appeal from a bench trial, we review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). The trial court judges the

credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). If the evidence falls "within [the] zone of reasonable disagreement," we will not substitute our judgment for that of the fact finder. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In determining whether legally sufficient evidence supports the finding under review, we consider evidence favorable to the finding, if a reasonable fact finder could consider it, and disregard evidence contrary to the finding, unless a reasonable fact finder could not disregard it. *Id.* at 827. In a factual sufficiency review, we view all of the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that it is clearly wrong and unjust. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989).

As noted previously, the parties were before the trial court seeking judicial intervention to govern Blackcross within a matter of weeks after the parties entered into their initial agreement. An interim agreement was reached in the form of the Rule 11 agreement. However, Appellant was found to be in violation of the Rule 11 agreement approximately one month later when the trial court entered the temporary injunction. Appellant soon caused Blackcross to file bankruptcy, thereby ending its status as an ongoing business concern. Accordingly, there is evidence that Appellant breached the parties' agreement. We overrule Appellant's third issue.

In his second issue, Appellant asserts that the trial court erred in rescinding the parties' agreement. He contends that Appellee was not entitled to rescission because he did not show that he did not have an adequate remedy at law, that he had not accepted benefits under the agreement, that he had returned or offered to return consideration provided by Appellant, that he had "clean hands," and that he had not

breached the agreement. *See, e.g.*, *Ferguson v. DRG/Colony N., Ltd.*, 764 S.W.2d 874, 886 (Tex. App.—Austin 1989, writ denied).

Rescission is an equitable remedy that extinguishes legally valid contracts that must be set aside because of fraud, mistake, or other reasons in order to avoid unjust enrichment. *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied). Rescission works to avoid the contract, to return any consideration paid, and to return the parties to their earlier positions as if no contract had existed. *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 509 (Tex. App.—Fort Worth 2012, no pet.). A trial court may order unilateral rescission of a contract if a party demonstrates a breach in a material part of the contract. *Costley v. State Farm Fire & Cas. Co.*, 894 S.W.2d 380, 386 (Tex. App.—Amarillo 1994, writ denied).

Generally, whether to grant a request for rescission lies within the trial court's discretion. *See Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.). An appellate court may reverse a trial court for abuse of discretion only if the record shows that the trial court acted unreasonably or in an arbitrary manner or, stated differently, without reference to the applicable guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In making this determination, the reviewing court views the evidence in the light most favorable to the actions of the trial court and indulges every legal presumption in favor of the judgment. *See Nordstrom v. Nordstrom*, 965 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

Appellant premises his second issue on the contention that Appellee failed to establish his entitlement to rescission. With respect to the lack of an adequate remedy at law, Appellant asserts that the bankruptcy trustee possessed approximately $100,000 in cash in excess of liabilities and that this amount was available to pay damages to Appellee. We disagree that these funds provided an

adequate remedy at law. These funds were presumably assets of Blackcross. However, Appellee's claims at trial were brought against Appellant, not Blackcross.

Appellant additionally contends that Appellee received benefits from the parties' agreement and that he is precluded from obtaining rescission without paying these benefits back or offering to pay the $39,000 that Appellant invested in Blackcross. We disagree. As noted previously, the goal of rescission is to put the parties back in their precontract positions. The trial court's order addressed the $39,000 that Appellant invested in Blackcross by ordering that he be paid that sum back, thereby restoring his precontract position. As for the benefits that Appellee received from Blackcross, both Appellant and Appellee received benefits from Blackcross in the form of salary and payment of expenses during the weeks that the two worked together. The benefits retained by both parties would appear to be approximately equal.

Appellant also contends that Appellee cannot seek rescission because Appellee breached the parties' agreement. The trial court's judgment contains a finding that both parties breached the initial agreement. However, the finding that Appellee breached the initial agreement is not included in the findings of fact and conclusions of law. Irrespective of this discrepancy, the trial court did not find which party breached the agreement first, and Appellant has not addressed the matter of timing in his appellate arguments. When one party materially breaches a contract, the other party to the contract is discharged or excused from further performance. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). Accordingly, Appellee was excused from performance under the parties' agreement if Appellant breached the agreement first. Appellee testified that Appellant breached the agreement first when he removed Appellee from Blackcross's bank account. Accordingly, there is evidence supporting the implicit

determination that Appellant breached the agreement first.  We overrule Appellant's second issue.

With the exception of the matters raised in his second and third issues, Appellant has not asserted that the remedy of rescission was an inequitable remedy or that the parties could not be returned to their precontract positions.  The trial court's decision to return the parties to the precontract positions did not appear to be an abuse of discretion in light of the fact that the parties' agreement became unworkable in a matter of weeks.  Furthermore, court intervention was ineffectual to resolve the parties' dispute—as reflected by the failed Rule 11 agreement.  Blackcross ended up in bankruptcy soon thereafter with its affairs concluded and its assets liquidated.  In many respects, the underlying suit resembled a dissolution proceeding.  We conclude that the trial court did not abuse its discretion by rescinding the parties' agreement and entering a judgment restoring them to their precontract positions.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

JUSTICE

December 15, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.